UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEVEN D. BANG, an individual,<br><br>                          Plaintiff,<br><br>  v.<br><br>LACAMAS SHORES HOMEOWNERS ASSOCIATION, a Washington nonprofit corporation,<br><br>                          Defendant. | No. 3:21-cv-05834-BJR<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AND DEFENDANT'S CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT |

## I.    <u>INTRODUCTION</u>

This is a citizen suit brought by Plaintiff Steven D. Bang ("Plaintiff") against Defendant Lacamas Shores Homeowners Association (the "HOA" or "Defendant") under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (the "Clean Water Act" or "CWA"), seeking an injunction to remedy Defendant's allegedly illegal discharge of pollutants into Lacamas Lake and its abutting wetlands. Presently before the Court are the parties' cross-motions for partial summary judgment, each seeking two discrete rulings on legal issues that bear on Plaintiff's claim. *See* Dkt. 17 ("Pl. Mot."); Dkt. 22 ("Def. Mot."). Having reviewed the motions, the record of the case, and the relevant legal authorities, the Court GRANTS in part and DENIES in part Plaintiff's motion, and GRANTS in part and DENIES in part Defendant's motion. The reasoning for the Court's decision follows.

ORDER - 1

## II.  BACKGROUND

### A.  Lacamas Shores and the Biofilter

Lacamas Shores is a residential community located on the southwest shore of Lacamas Lake in Clark County, Washington.  Defendant, the HOA of that community, owns and is responsible for maintaining a wetland biofilter stormwater treatment system (the "Biofilter") that was constructed in the late 1980s in order to obtain the necessary permits to develop Lacamas Shores.  In short, the Biofilter is a man-made wetland that uses vegetation (*e.g.*, grasses and aquatic plants) to sequester and remove pollutants introduced by stormwater runoff from the development.  Stormwater collected in drainage basins is directed – through various mechanisms, including underground pipes and a "bubbler" system – into the Biofilter, and then is discharged via two separate "outlets" into Lacamas Lake.  *See, e.g.*, Declaration of John McConnaughey (Dkt. 19), Ex. 2.  Plaintiff claims that, while the Biofilter had been properly maintained for several years, it has since fallen into disrepair because of the HOA's failure to plant new vegetation and harvest decomposing vegetation. Pl. Mot. at 10-11.  According to Plaintiff, the growth and decomposition of inappropriate vegetation in the Biofilter has caused it to generate new pollutants that are then released into Lacamas Lake and the naturally occurring wetlands abutting it.  Thus, Plaintiff asserts, "the HOA's lack of maintenance of the Biofilter has transformed the Biofilter from a system that removes pollutants into a system that adds pollutants." *Id.*

### B.  Procedural Posture

Plaintiff filed this lawsuit on November 12, 2021 under the CWA's citizen suit enforcement provisions.  Complaint ("Compl.," Dkt. 1); *see* 33 U.S.C. § 1365.  In it, he claims that Defendant has been violating Section 301(a) of the CWA by discharging pollutants from the Biofilter into Lacamas Lake and abutting wetlands without a National Pollutant Discharge

ORDER - 2

Elimination System ("NPDES") permit. *See* 33 U.S.C. § 1311(a) ("the discharge of any pollutant by any person shall be unlawful"). Plaintiff's lawsuit seeks, in addition to civil penalties and other forms of relief, an injunction requiring the HOA to cease making the alleged discharges, remediate the alleged environmental damage, and develop quality assurance procedures to ensure future compliance with the CWA.

On August 31, 2022, the parties filed cross-motions for partial summary judgment, seeking several discrete legal rulings on issues relevant to this case. Plaintiff and Defendant each filed oppositions to the other's motion (Dkt. 23 ("Pl. Opp."); Dkt. 25 ("Def. Opp")), and each replied (Dkts. 27-28).

### III.     SUMMARY JUDGMENT STANDARD OF REVIEW

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there is not, summary judgment is warranted.

### IV.     DISCUSSION

Neither of the parties' cross-motions seek summary judgment on Plaintiff's Clean Water Act claim. Instead, the motions each seek two separate rulings on legal issues that bear on Plaintiff's ability to prevail on, and Defendant's ability to mount a defense to, the claim. The

ORDER - 3

Court will first review the sought rulings in Plaintiff's motion, and then will do the same for Defendant's motion.

### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff, first, asks the Court to rule that "the HOA can be liable under the CWA for its pollutant discharges even if the Biofilter is a water of the United States." *See* Pl. Mot. at 2. Second, Plaintiff asks the Court to rule that pollutant discharges from the Biofilter are not covered by a specific NPDES permit and, therefore, are not authorized. *See id*. As discussed below, the Court disagrees with Plaintiff on the first issue, but agrees with him on the second.

#### 1. Whether Plaintiff Can Prevail on its Clean Water Act Claim if the Biofilter is Classified as a Water of the United States

The Clean Water Act defines the "discharge of a pollutant" to mean, as relevant here, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). Consistent with that definition, "[t]o establish liability for an unpermitted discharge under the CWA, plaintiff must show that defendant (1) discharged (2) a pollutant (3) to navigable waters (4) from a point source (5) without permit authorization." *Puget Soundkeeper All. v. Whitley Mfg. Co.*, 145 F. Supp. 3d 1054, 1055 (W.D. Wash. 2015) (citing *Headwaters, Inc. v. Talent Irrigation Dist*., 243 F.3d 526, 532 (9th Cir. 2001)). The CWA defines "navigable waters" to "mean[] the waters of the United States." 33 U.S.C. § 1362(7). A "point source," in turn, is defined as: "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *Id.* § 1362(14).

As noted above, Plaintiff's CWA claim is premised on allegations that the HOA has been "discharging pollutants from the Biofilter" to Lacamas Lake and the wetlands abutting it. *See*

ORDER - 4

Compl. ¶ 53. He alleges that "the Biofilter as a whole is a point source, and each discrete outfall" (*i.e.*, each of the Biofilter's two outlets) "is a separate point source." *Id*. ¶ 54. The parties dispute whether the Biofilter is a water of the United States as a factual matter, but they assume it is for purposes of the present cross-motions. *See, e.g.*, Pl. Mot. at 12-13; Def. Mot. at 1-2. Given these allegations and the assumption at hand, Plaintiff's motion seeks a legal ruling that he can prevail on his claim even if the Biofilter is classified as a water of the United States as well as a point source. *See* Pl. Mot. at 16-18. Defendant argues that this theory of liability is incompatible with the CWA. *See* Def. Mot. at 7-11. The Court agrees with Defendant.

While the Court makes no determination as to whether Biofilter and its two outlets are in fact point sources,[1] the Court finds that Plaintiff cannot prevail on his CWA claim if it is premised on the Biofilter simultaneously being a point source and a water of the United States. As noted above, the CWA, in defining what it means to discharge a pollutant, sets out a to-from relationship between point sources and navigable waters. *See South California All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*, 853 F.3d 1076, 1078 (9th Cir. 2017) ("The CWA prohibits the discharge of any pollutant *into* navigable waters *from* any point source without a permit." (emphasis added)). Moreover, the statute separately defines those terms using disparate and non-overlapping language. *Compare* 33 U.S.C. § 1362(7) *with id.* § 1362(14). These aspects of the statutory text indicate that point sources and navigable waters are two different things: the former sends polluted water, and the latter receives it. *See Toxics Action Ctr., Inc. v. Casella Waste*

---

[1] Plaintiff's motion sets forth an argument that, consistent with case law broadly interpreting the term "point source," *see, e.g.*, *Community Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 955 (9th Cir. 2002), the Biofilter and its two outlets are point sources as a factual matter because they are "discernible, confined, and discrete conveyances" that convey water and pollutants to Lacamas Lake. *See, e.g.*, Pl. Mot. at 18. However, the legal question posed by Plaintiff's motion, and this Court's analysis in reaching its answer, does not require a factual determination as to whether those structures are actually point sources.

ORDER - 5

*Sys., Inc.*, No. 18-cv-393, 2021 WL 3549938, at *7-8 (D.N.H. Aug. 11, 2021) (finding that plaintiff's contention that "a water of the United States can also simultaneously be a point source … cannot be squared with the statutory text"). Indeed, in *Rapanos v. United States*, 547 U.S. 715 (2006), wherein the Supreme Court reviewed the circumstances under which wetlands can be considered waters of the United States, the plurality opinion recognized that the CWA's "definitions [] conceive of 'point sources' and 'navigable waters' as separate and distinct categories." *Id.* at 735-36 (observing that the "separate classification" of ditches, channels, and conduits as point sources demonstrates "that these are, by and large, *not* 'waters of the United States'" (emphasis in original)).

Furthermore, and critically, the CWA's definition of the "discharge of a pollutant" expressly contemplates the "addition" of a pollutant to a navigable water. 33 U.S.C. § 1362(12). Plaintiff's theory of liability – in which one navigable water adds pollutants into another – would render inoperative the term, "addition." In two separate decisions, the Supreme Court held that the transfer of polluted water between different portions of the same body of water does not constitute the "addition" of pollutants. *See Los Angeles Cnty. Flood Control Dist. v. Nat. Res. Def. Council, Inc.*, 568 U.S. 78, 82 (2013) ("Under a common understanding of the meaning of the word 'add,' no pollutants are 'added' to a water body when water is merely transferred between different portions of that water body."); *South Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 110 (2004) ("[I]f one takes a ladle of soup from a pot, lifts it above the pot, and pours it back into the pot, one has not 'added' soup or anything else to the pot." (citation omitted)).

ORDER - 6

While *Miccosukee* and *Los Angeles County* did not address whether the transfer of polluted water between *separate bodies* of water can constitute the "addition" of pollutants,[2] that question has been answered by the Environmental Protection Agency. In 2008, the EPA issued the Water Transfers Rule, which clarified that the transfer of pollutants between separate waters of the United States does not constitute an "addition" of pollutants necessitating permit authorization.[3] *See* National Pollutant Discharge Elimination System (NPDES) Water Transfers Rule, 73 Fed. Reg. 33,697 (June 13, 2008) (the "Water Transfers Rule" or "WTR"). That rule is premised on the "unitary waters" theory, according to which an "addition" of pollutants occurs "only when pollutants first enter navigable waters from a point source, not when they are moved between navigable waters." *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1217 (11th Cir. 2009). The EPA, in explaining the basis for the WTR, elaborated:

> [N]othing is being added 'to' 'the waters of the United States' by virtue of the water transfer, because the pollutant at issue is already part of 'the waters of the United States' to begin with. Stated differently, when a pollutant is conveyed along with, and already subsumed entirely within, navigable waters and the water is not diverted for an intervening use, the water never loses its status as 'waters of the United States,' and thus nothing is added to those waters from the outside world.

Water Transfers Rule at 33,701.

Plaintiff does not dispute that the EPA's interpretation of the CWA underlying the Water Transfers Rule is entitled to *Chevron* deference. The Court agrees with those circuit courts that have found that it is so entitled. *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency*, 846 F.3d 492, 533 (2d Cir. 2017) ("Because the Water Transfers Rule is a reasonable

---

[2] *Miccosukee* expressly declined to reach that question, *see Miccosukee*, 541 U.S. at 112, and *Los Angeles County* simply addressed the same "narrow" issue that had previously been decided in *Miccosukee* – *i.e.*, whether transfers within the same body of water can constitute an addition of pollutants. *See Los Angeles Cnty.*, 568 U.S. at 82.

[3] The Water Transfers Rule is codified at 40 C.F.R. § 122.3(i). That regulation provides that discharges from a "water transfer" – defined as "an activity that conveys or connects waters of the United States without subjecting the transferred water to intervening industrial, municipal, or commercial use" – does not require NPDES permits. *Id*.

ORDER - 7

construction of the Clean Water Act supported by a reasoned explanation, it survives deferential review under Chevron."); *Friends of Everglades*, 570 F.3d at 1228 ("The EPA's regulation adopting the unitary waters theory is a reasonable, and therefore permissible, construction of the [CWA]."). Thus, the Court defers to the EPA's construction of the statute and its recognition of the unitary waters theory. *See Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1220-21 (9th Cir. 2015) ("When 'the agency's answer is based on a permissible construction of the statute,' we must defer to the agency's view and not 'impose [our] own construction on the statute.'" (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984))).

   The Court finds that the EPA's interpretation of the Clean Water Act forecloses Plaintiff's theory of liability in this motion. If it assumed that the Biofilter is a water of the United States, then consistent with the unitary waters theory, any pollutants created by the Biofilter would not be "added" to subsequent bodies of water. Those pollutants would initially exist within a navigable water (*i.e.*, the Biofilter), and although they may later move into separate waters (*i.e.*, through the Biofilter's two outlets), they would at all times simply remain present in the unitary waters of the United States.[4] *See Toxics Action Ctr.*, 2021 WL 3549938, at *8 ("Assuming a point source and a water of the United States were one and the same, a pollutant that is present in such a point source would already be in the waters of the United States, so there would be no addition of pollutants to the waters of the United States."). Therefore, to the extent the Biofilter is classified as a water of the United States, Plaintiff cannot prevail on a CWA claim premised on the theory that the Biofilter

---

[4] Insofar as the Biofilter alone (and not its two outlets) is a water of the United States, the outlets theoretically could have added pollutants to subsequent waters had they themselves been generating pollutants. Plaintiff, however, claims only that the Biofilter has been doing so. *See, e.g.*, Compl. ¶ 55 (alleging that the addition of pollutants results from the Biofilter falling into disrepair).

ORDER - 8

and its two outlets constitute point sources that discharged pollutants to Lake Lacamas and its abutting wetlands.[5]

This decision, of course, does not find as a factual matter that none of the Biofilter or its outlets are point sources, or that the Biofilter is a water of the United States. Rather, it finds only that a theory of liability premised on the Biofilter simultaneously being a point source and a water of the United States is incompatible with the CWA. It may very well be the case that the Biofilter is *not* a water of the United States and *only* a point source. Under that scenario, a theory of liability premised on the addition of pollutants from the Biofilter (as a point source) to Lacamas Lake (as a navigable water) would comport with the CWA. It may also be the case that, if the Biofilter is indeed a water of the United States, there exists some point source within or in relation to the Biofilter that is not itself a navigable water. Under that scenario, a viable theory of liability could be premised on the addition of pollutants from that point source to the Biofilter. The Court, however, does not consider those scenarios in resolving the parties' cross-motions given that their stipulated assumption – solely for purposes of the motions – is that the Biofilter is a water of the United States, and Plaintiff's claim is that the Biofilter as a whole is a point source.

Accordingly, the Court will deny this part of Plaintiff's motion.

---

[5] The Court notes that Plaintiff points to several cases in which district courts held or suggested that navigable waters can also be point sources under certain circumstances. *See Na Kia'i Kai v. Nakatani*, 401 F. Supp. 3d 1097, 1107-08 (D. Haw. 2019); *United States v. Vierstra*, 803 F. Supp. 2d 1166, 1173 (D. Idaho 2011), *aff'd on other grounds*, 492 F. App'x 738 (9th Cir. 2012); *National Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 699 F. Supp. 2d 209, 215-16 (D.D.C. 2010), *vacated on other grounds*, 663 F.3d 470 (D.C. Cir. 2011); *North Carolina Shellfish Growers Ass'n v. Holly Ridge Assocs., LLC.*, 278 F. Supp. 2d 654, 672-73 (E.D.N.C. 2003). The Court, however, does not find those decisions to be persuasive. Three of those decisions – *Vierstra*, *National Ass'n of Home Builders*, and *North Carolina Shellfish Growers* – were issued before or did not address the EPA's interpretation of the CWA underlying the Water Transfers Rule, and none of the four decisions address the unitary waters theory.

ORDER - 9

### 2. Whether the Alleged Pollutant Discharges Are Covered by the Municipal Permit

Plaintiff's motion seeks a ruling that the Biofilter's pollutant discharges are not covered by the Western Washington Phase II Municipal Stormwater Permit (the "Municipal Permit"), which is an NPDES permit that authorizes certain stormwater discharges by municipal sewer systems in specified areas of Washington. *See* Declaration of Jesse Nike ("Nike Decl.," Dkt. 21), Ex. 4; Pl. Mot. at 2. Plaintiff asks for this ruling because Defendant stated, as one of its affirmative defenses in answering the Complaint, that "the conduct and circumstances underlying Plaintiff's claim are authorized by an NPDES permit." Dkt. 5 ¶ 64. Defendant since explained, in an interrogatory response, that the Biofilter is covered by the Municipal Permit because it is operated by the City of Camas.

The Municipal Permit, by its own terms, is "applicable to owners or operators of regulated small Municipal Separate Storm Sewer Systems (MS4s)" located in specified areas of western Washington. Nike Decl., Ex. 4 at 1. MS4s are defined, in relevant part, as "a conveyance, or system of conveyances … [o]wned or operated by a state, city, town, borough, county, parish, district, association, or other public body (created by or pursuant to state law) …." *Id*. at 51-52. Plaintiff argues that the Biofilter is not an MS4 because it is a private stormwater treatment facility owned and operated by a private entity: the HOA. In support of his argument, Plaintiff submits a City of Camas stormwater facility map (*see* Declaration of Marie Tabata-Callerame (Dkt 20), Ex. 5), and a list of city-owned facilities (*see id.*, Ex. 6), together indicating that the Biofilter is a privately owned facility not owned or operated by the City of Camas.

Defendant offers no response to Plaintiff's argument, and thereby fails to rebut the evidence Plaintiff presents demonstrating that the Biofilter is not an MS4 covered by the Municipal Permit. Therefore, Defendant has not met its burden of setting forth "specific facts showing a

ORDER - 10

genuine issue for trial" as necessary to survive summary judgment. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). Accordingly, the Court grants this part of Plaintiff's motion and finds that the Municipal Permit does not apply to any pollutant discharges from the Biofilter.

### B.     Defendant's Motion for Partial Summary Judgment

Defendant's motion seeks two separate rulings. First, Defendant asks the Court to rule that Plaintiff cannot state a cognizable claim under the CWA where the Biofilter is classified both as a point source and a water of the United States. *See* Def. Mot. at 7. Second, Defendant asks the Court to rule that the Biofilter cannot "discharge" any pollutants because it is not a meaningfully distinct body of water from Lacamas Lake and the natural wetlands abutting it. *See id.* at 11.

The first ruling sought by Defendant presents the same issue as the first ruling sought by Plaintiff's motion. *See supra* at 4-9. Having already found, as a matter of law, that Plaintiff cannot prevail on his CWA claim premised on the theory that the Biofilter is simultaneously a point source and a water of the United States, the Court grants summary judgment to Defendant on that part of its motion. The Court, then, will proceed to review the second sought ruling.

#### 1.     Whether the Biofilter is a Meaningfully Distinct Body of Water

As discussed above, the Supreme Court has held that "the transfer of polluted water between 'two parts of the same water body' does not constitute a discharge of pollutants under the CWA." *Los Angeles Cnty.*, 568 U.S. at 82 (citing *Miccosukee*, 541 U.S. at 109-12). For example, in *Miccosukee*, the court held that the transfer of polluted water from a canal to a reservoir (via a pump station) would not constitute a discharge of pollutants if the canal and reservoir were "not meaningfully distinct water bodies." *Miccosukee*, 541 U.S. at 112. Relying on these decisions, Defendant contends that the Biofilter cannot discharge pollutants to Lacamas Lake and its abutting

ORDER - 11

wetlands because all of those waters are hydrologically connected and, therefore, they are not "meaningfully distinct water bodies." *See* Def. Mot. at 11-13.

As Plaintiff points out in opposing the motion, Defendant cites to nothing in the record supporting its conclusory assertion that the Biofilter is not a "meaningfully distinct water body." Defendant, in its reply, abandons its argument. Therefore, absent any factual showing from Defendant on this issue, Defendant is not entitled to a ruling that the Biofilter is not a meaningfully distinct body of water from Lacamas Lake and the wetlands abutting it. *See InteliClear*, 978 F.3d at 657 (on summary judgment, "[t]he moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim."). Accordingly, the Court denies this part of Defendant's motion.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion for partial summary judgment (Dkt. 17), and GRANTS in part and DENIES in part Defendant's motion for partial summary judgment (Dkt. 22). The Court rules as follows:

1. Plaintiff cannot prevail on his CWA claim to the extent it is premised on the theory that the Biofilter is simultaneously a point source and a water of the United States.

2. The pollutant discharges from the Biofilter are not covered by the Western Washington Phase II Municipal Stormwater Permit.

3. The Court does not find that Biofilter is not a meaningfully distinct body of water from Lacamas Lake and the natural wetlands abutting it.

Dated: October 31, 2022

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 12