The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN D. BANG, an individual,
Plaintiff,

v.

LACAMAS SHORES HOMEOWNERS
ASSOCIATION, a Washington nonprofit
corporation,
Defendant.

CASE NO. 3:21-cv-05834-BJR

**ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

## I.      INTRODUCTION

This is a citizen suit brought by Plaintiff Steven D. Bang ("Plaintiff") against Defendant Lacamas Shores Homeowners Association (the "HOA" or "Defendant") under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (the "Clean Water Act" or "CWA"). Plaintiff alleges that Defendant is adding pollutants from a man-made stormwater treatment facility (the "Biofilter") located on Defendant's property, to nearby wetlands and Lacamas Lake. Compl., ¶ 2. Plaintiff is suing for an imposition of civil fines and an order compelling Defendant either to stop adding pollutants, or to obtain a National Pollutant Discharge Elimination System ("NPDES") permit or other approval under the CWA. *Id.*, ¶ 3.

The instant matter comes before the Court on (1) Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 31; and (2) Defendant's Motion for Summary Judgment, Dkt. No. 34.

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

- 1

Plaintiff's motion asks the Court to revise an earlier ruling on a discrete legal element of Plaintiff's claims, in which the Court held that "Plaintiff cannot prevail on his CWA claim if it is premised on the Biofilter simultaneously being a point source and a water of the United States," or "WOTUS," as defined under the CWA. October 31, 2022 Order, Dkt. No. 30, at 5 ("October 2022 Order"). Defendant opposes Plaintiff's motion, and also seeks a ruling that (1) the undisputed facts demonstrate that the Biofilter is a WOTUS; and/or (2) Plaintiff will be unable to prove that Defendant is causing the addition of any pollutants. Having reviewed the parties' briefs filed in support of and opposition to the motions, the Court finds and rules as follows.

## II.    BACKGROUND

Lacamas Shores is a residential development located near the southwest shore of Lacamas Lake in Clark County, Washington. In the 1980s, as a condition of development, a man-made wetland—referred to in this case as the Biofilter—was installed to capture pollutants in stormwater runoff from the hillside development and prevent them from flowing directly into the lake. Compl., ¶ 22. Defendant, the Lacamas Shores HOA, owns and is responsible for maintaining the Biofilter, which uses vegetation (e.g., grasses and aquatic plants) to sequester and remove pollutants introduced by stormwater runoff from the development. *Id*., ¶ 30. The system was designed to work by collecting stormwater in drainage basins and directing it – through various mechanisms, including underground pipes and a "bubbler" system – into the Biofilter, and then discharging the filtered water via two separate "outlets" into shoreline wetlands and Lacamas Lake. *See, e.g*., McConaughry Decl., Dkt. No. 18, Ex. 2. Plaintiff claims that, while the Biofilter was operating as intended for several years, it has since fallen into disrepair because of the HOA's failure to plant new vegetation and harvest decomposing

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

- 2

vegetation. *Id.*, ¶ 34.  According to Plaintiff, the growth and decomposition of inappropriate vegetation in the Biofilter has caused it to generate new pollutants that are then released into Lacamas Lake and the naturally occurring wetlands abutting it. Thus, Plaintiff asserts, "the HOA's lack of maintenance of the Biofilter has transformed the Biofilter from a system that removes pollutants into a system that actually adds pollutants." *Id.*, ¶ 40.

In November 2021, Plaintiff filed this lawsuit under the CWA, which prohibits a person from (1) discharging a pollutant (2) into navigable waters (3) from a point source (4) without a discharge permit. *Comm. to Save Mokelumne River v. E. Bay Mun. Util. Dist.,* 13 F.3d 305, 309 (9th Cir. 1993); 33 U.S.C. § 1311(a). Plaintiff claims the Biofilter, and/or each of the two outlets through which water flows into the shoreline wetlands, are "point sources" within the definition of the CWA. Compl. ¶ 54. In an order on cross motions for partial summary judgment issued on October 31, 2022, this Court concluded that "to the extent the Biofilter is classified as a water of the United States, Plaintiff cannot prevail on a CWA claim premised on the theory that the Biofilter and its two outlets constitute point sources that discharged pollutants" to the jurisdictional waters of Lake Lacamas and its abutting wetlands. October 2022 Order at 8-9. The Court was not asked to (and thus did not) determine that the Biofilter was in fact either a WOTUS or a point source.

By his instant motion, Plaintiff asks the Court to revisit this earlier ruling. Plaintiff's motion is based on the Revised Definition of Water of the United States ("Revised WOTUS Definition"), which was issued and went into effect in early 2023, after the Court issued its ruling. 88 Fed. Reg. at 3004. Plaintiff argues, in sum, that the Revised WOTUS Definition is a change in a controlling law, and/or new evidence, that demonstrates the Court's earlier ruling is

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

- 3

no longer valid. In the alternative, Plaintiff argues the Revised WOTUS Definition creates an

exemption under which the Biofilter is not a WOTUS. Defendant opposes Plaintiff's motion, and

also seeks summary judgment in its favor, arguing that Plaintiff's claims must be dismissed

because he will be unable to prove several elements of his CWA claims.

### III.   DISCUSSION

**A.   Summary Judgment Standard**

"The standard for summary judgment is familiar: 'Summary judgment is appropriate

when, viewing the evidence in the light most favorable to the nonmoving party, there is no

genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir.

2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d

1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there is not, summary

judgment is warranted.

**B.   Plaintiff's Motion for Partial Summary Judgment**

**1.   Whether It Is Possible for the Biofilter to Be Both a Point Source and a WOTUS**

Plaintiff's motion asks the Court to revisit the holding of the October 2022 Order. A closer

examination of that ruling is therefore in order.

**a.   October 2022 Order**

As outlined in the October 2022 Order, the Clean Water Act defines the "discharge of a

pollutant" to mean, as relevant here, "any addition of any pollutant to navigable waters from any

point source." 33 U.S.C. § 1362(12). Consistent with that definition, "[t]o establish liability for an

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

- 4

unpermitted discharge under the CWA, plaintiff must show that defendant (1) discharged (2) a pollutant (3) to navigable waters (4) from a point source (5) without permit authorization." *Puget Soundkeeper All. v. Whitley Mfg. Co.*, 145 F. Supp. 3d 1054, 1055 (W.D. Wash. 2015) (citing *Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526, 532 (9th Cir. 2001)). The CWA defines "navigable waters" to "mean[] the waters of the United States," which include (with certain qualifications and among other things) "lakes, rivers, streams (including intermittent streams), mudflats, sandflats, [and] wetlands." 33 U.S.C. § 1362(7); *Rapanos v. United States*, 547 U.S. 715, 724 (2006) (citing 33 CFR § 328.3(a)(3)). A "point source," in turn, is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *Id.* § 1362(14). Plaintiff's CWA claim is premised on allegations that the HOA has been "discharging pollutants from the Biofilter," a point source, to Lacamas Lake and the wetlands abutting it, both of which are waters of the United States. Compl. ¶ 56.

On a motion for partial summary judgment filed by Plaintiff, the Court held in the October 2022 Order that the Biofilter could not meet the definition of a "point source" if the facts demonstrated that the Biofilter was a WOTUS. In essence, the Court inferred from the statute's text, from rules promulgated by the Environmental Protection Agency ("EPA") and the Army Corps of Engineers ("Corps"), and from relevant caselaw that the definition of "point source" tacitly but necessarily included an additional element: "not a WOTUS." More specifically, the Court relied on the to/from structure of statute ("*to* navigable waters *from* a point source") and the distinct definitions of the terms "point source" and "navigable waters" in the statute, which "us[ed]

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

- 5

disparate and non-overlapping language." October 2022 Order at 5-6 (citing *Rapanos*, 547 U.S. at 735-36) (CWA's "definitions [] conceive of 'point sources' and 'navigable waters' as separate and distinct categories."). Citing *Toxics Action Center*, a recent case from the District of New Hampshire presenting relevantly similar facts, the Court construed the CWA's text to mean that "point sources and navigable waters are two different things: the former sends polluted water, and the latter receives it." October 2022 Order at 5 (citing *Toxics Action Ctr., Inc. v. Casella Waste Sys., Inc.*, 2021 WL 3549938, at *7-8 (D.N.H. Aug. 11, 2021) (finding that plaintiff's contention that "a water of the United States can also simultaneously be a point source ... cannot be squared with the statutory text")). The Court also observed that caselaw interpreting the EPA's 2008 Water Transfers Rule and the "unitary waters theory" was consistent with this reading of the CWA. October 2022 Order at 6-9 (citing, inter alia, *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1217 (11th Cir. 2009)). Accordingly, the Court "agree[d] with Defendant" that "to the extent the Biofilter is classified as a water of the United States, Plaintiff cannot prevail on a CWA claim premised on the theory that the Biofilter and its two outlets constitute point sources that discharged pollutants to Lake Lacamas and its abutting wetlands." October 2022 Order at 8-9.

### b. The Revised WOTUS Definition

Plaintiff's instant motion asks the Court to revisit this holding. The motion turns on issuance of the Revised Definition of "Waters of the United States" by EPA and the Army Corps of Engineers, in January 2023, after the Court issued the October 2022 Order. 88 FR 3004-01. Plaintiff argues that the new rule clarifies that under the CWA, it is possible for a waterbody to be both a point source and a WOTUS, and constitutes new law that requires reversal of the Court's

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

previous ruling.

The relevant portion of the new rule observes that "[t]he agencies have historically taken the position that a ditch can be both "waters of the United States" and a point source." 88 FR 3004-01, 3114. The Revised WOTUS Definition acknowledges that EPA's Navigable Waters Protection Rule ("NWPR")—issued by EPA and the Corps in April 2020, but vacated nationwide by the District Court of Arizona on August 30, 2021—took the position that a ditch is *either* "'waters of the United States' *or* a point source." *Id*. (citing 2020 Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22250-01 (April 21, 2020)); *see Pascua Yaqui Tribe v. United States Env't Prot. Agency*, 557 F. Supp. 3d 949, 951 (D. Ariz. 2021). However, the Revised WOTUS Definition goes on to say "[t]he agencies have further evaluated this question and concluded that the better reading of the statute is the agencies' historic position that a ditch can be both a point source and 'waters of the United States.'"[1]

The Revised WOTUS Definition traces this conclusion to a 1975 opinion of the General Counsel of EPA interpreting the Clean Water Act. That opinion stated "what is prohibited by section 301 is 'any addition of any pollutant to navigable waters from any point source.' It is therefore my opinion that, even should the finder of fact determine that any given irrigation ditch is a navigable water, it would still be permittable as a point source where it discharges into another navigable water body, provided that the other point source criteria are also present." Revised

---

[1] Throughout this case there has been confusion regarding the status of the NWPR. Neither party referenced it in the first round of summary judgment motions, though the court in *Toxics Action Center* relied on it in finding a water feature cannot be both a point source and a WOTUS. 2021 WL 3549938, at *7-8. In this round of cross motions for summary judgment, both parties initially agree that "[t]he NWPR was in effect at the time of this Court's October 2022 order," Pl.'s Mot. at 6, Def.'s Mot. at 7, a claim they both later tacitly abandon. In any event, it is now clear that the NWPR was vacated and effectively a dead letter on August 30, 2022. *See Sackett v. Env't Prot. Agency*, 598 U.S. 651, 668 (2023) ("This rule too did not last. After granting the EPA's voluntary motion to remand, a District Court vacated the rule.") (citing *Pascua Yaqui Tribe*, 557 F.Supp.3d at 957).

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

- 7

WOTUS Definition, 88 Fed. Reg. at 3114 (citing *In re Riverside Irrigation District*, 1975 WL 23864, at *4 (June 27, 1975)). The Revised WOTUS Definition also refers to the two opinions in *Rapanos v. United States* as supporting the conclusion that at least some point sources might also be classified as WOTUS, particularly Justice Kennedy's concurrence, which observed "certain water bodies could conceivably constitute both a point source and a water." *See* Revised WOTUS Definition, 88 Fed. Reg at 3114 (citing *Rapanos*, 547 U.S. at 772 (Kennedy, J., concurring)) (noting that Kennedy's concurrence "rejected the conclusion that because the word 'ditch' was in the definition of 'point source' a ditch could never be 'waters of the United States'"). The Revised WOTUS Definition even found support in Justice Scalia's *Rapanos* plurality opinion. *Id*. (citing *Rapanos*, 547 U.S. at 735-36 (Scalia, J., plurality opinion)) ("Even the plurality opinion in *Rapanos*, which was relied upon by the agencies in the 2020 NWPR for its change in position, left room for some ditches to both point sources and "waters of the United States," finding that the two categories should not be "significantly" overlapping."). The Revised WOTUS Definition concludes that "[t]here is simply no indication in the text of the Clean Water Act that ditches that meet the definition of a point source cannot also be 'waters of the United States.'" *Id*.

### c. Whether the Revised WOTUS Definition Requires Reconsideration of the October 2022 Order

As noted, Plaintiff's Motion for Partial Summary Judgment essentially seeks reconsideration of the Court's October 2022 based on the agencies' issuance of the Revised WOTUS Definition. Pl.'s Mot. at 10.[2] This Court has discretion to revise "any order or other

---

[2] Plaintiff argues there has been a change in controlling law that justifies departure from the "law of the case," a doctrine that "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). The doctrine does not, however, "bar a court from reconsidering its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order," and is "wholly inapposite" at this stage of this case. *Askins v. U.S. Dep't of*

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

- 8

decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); s*ee also City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001)("[A]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."). Furthermore, while the Western District of Washington Local Rule 7(h)(2) governing motions for reconsideration requires filing "within fourteen days after the order to which it relates is filed," Federal Rule 60(b) provides, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding," for "any [] reason that justifies relief," and that such motion must be filed only "within a reasonable time." Fed. R. Civ. P. 60(b)(6), (c)(1).

The Court finds that the Revised Rule does precisely what Plaintiff argues: it makes clear that in the agencies' view, nothing in the CWA itself or in prior interpretive rules (other than the now-defunct NWPR) requires the conclusion that a point source and WOTUS are necessarily mutually exclusive categories. In fact, the Revised WOTUS Definition directly addresses and rejects some of the very factors this Court relied on in its previous order, including the plain text of the CWA and the "disparate and non-overlapping" definitions of point source and WOTUS, and *dicta* in Justice Scalia's opinion in *Rapanos* suggesting that the categories could not be "'significantly' overlapping." Revised WOTUS Definition, 88 Fed. Reg. at 3114 (citing 547 U.S.

---

*Homeland Sec.,* 899 F.3d 1035, 1042 (9th Cir. 2018); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper,* 254 F.3d 882, 888 (9th Cir. 2001). Because the law of the case doctrine is not applicable to the question presented by Plaintiff's motion, the Court "is free to correct any errors or misunderstandings without having to find that its prior decision was 'clearly erroneous'" or requires amendment due to a change in controlling law. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018).

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

- 9

at 735-36 (Scalia, J., plurality opinion)).

In the new rule the agencies also explicitly reject the holding in *Toxics Action Center*, the District of New Hampshire case on which this Court relied in its October 2022 Order, in part because *Toxics* relied on the 2020 NWPR, which was vacated mere weeks after *Toxics Action Center* was issued. *See* Revised WOTUS Definition, n. 120 ("The agencies considered that a district court has reached a contrary conclusion, but the agencies decline to adopt the decision's reasoning in this rule, including because it relies on the change in interpretation articulated for the first time in the 2020 NWPR and which the agencies reject in this rule, and is inconsistent with the position of five Justices in *Rapanos*."). The agencies further observe that its interpretation is consistent with the Water Transfers Rule—another factor the Court relied on in its earlier ruling. *See* October 2022 Order at 6-8; Revised WOTUS Definition, 88 Fed. Reg. at 3068 ("This rule will also not affect the existing statutory or regulatory exemptions or exclusions from section 402 NPDES permitting requirements, such as . . . the status of water transfers.").

While the cited language in the Revised WOTUS Definition refers specifically to ditches and clarifies that a ditch might under some circumstances be classified as both a point source and a WOTUS, Plaintiff argues that elsewhere, the rule also makes clear that the agencies' conclusion is not limited to ditches, and applies generally to other waterbodies as well. *See* Pl.'s Mot. at 13-15 (citing language in Revised WOTUS Definition requiring permit for pollutant discharge from a point source even for waste treatment systems that are also WOTUS). The Court does not discern anything in the new rule limiting the agencies' interpretation to ditches, and indeed, Defendant does not claim that the rule should be read as limited to ditches, or deny that Plaintiff's interpretation of the rule is otherwise correct. Instead, Defendant raises what are essentially

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

procedural arguments for denying Plaintiff's motion. First, Defendant argues that the Revised Rule should not be given retroactive effect. As noted, however, the Revised WOTUS Definition does not announce new law; it merely clarifies the agencies' "longstanding, historic view" that a point source and WOTUS are not necessarily mutually exclusive, a position it states the agencies have held (with one ill-fated exception, the NWPR) since at least 1975. Revised WOTUS Definition, 88 Fed. Reg. at 3114. Accordingly, the Court is not being asked to retroactively apply new law, but to revisit an interpretation of a statute with the benefit of a clarification from the agencies charged with executing that statute. The retroactive application analysis is simply inapposite.[3] *See Norsoph v. Riverside Resort & Casino, Inc.,* 611 F. Supp. 3d 1058, 1072 (D. Nev. 2020) (quoting *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000) ("[C]larifying legislation is not subject to any presumption against retroactivity and is applied to all cases pending as of the date of its enactment.").

Second, Defendant argues the Revised Rule will not survive an inevitable legal challenge and thus should be disregarded now. This argument, unsupported by any legal authority, is frivolous. To be clear, Defendant is not itself challenging the validity of the rule (under the Administrative Procedures Act or otherwise); it argues the Court should simply ignore the rule because *others* are challenging it, speculating that they will prevail. Def.'s Opp. at 15 ("The Revised WoTUS Rule will be unlikely to fare any better" than the NWPR.). The Court acknowledges that this area of the law has been the focus of an unusual amount of litigation, sometimes leading to divergent and even directly conflicting results. But the Court cannot rule

---

[3] Defendant argues alternatively that even if the Court determined that "retroactive application" of new law were appropriate, this application would divest the Court of jurisdiction over Plaintiff's claims. Because as noted the Court is not retroactively applying new law, this argument is moot.

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

1    based on what the law may be one day depending on future agency action or higher court rulings.

2    It can only say what the law currently *is*, which the Revised WOTUS Definition makes clear.

3           For the foregoing reasons, the Court grants Plaintiff's motion on this point. The Revised

4    WOTUS Definition makes clear that a "point source" and "waters of the United States" are not

5    necessarily mutually exclusive categories as a matter of law, and thus the Court vacates its earlier

6    holding that "Plaintiff cannot prevail on his CWA claim to the extent it is premised on the theory

7    that the Biofilter is simultaneously a point source and a water of the United States." October 2022

8    Order at 12.[4]

9                          **2.   Whether Biofilter Is a Point Source**

10          Plaintiff also requests a ruling that the Biofilter meets the CWA definition of a "point

11   source." As noted, the CWA defines point source as "any discernible, confined and discrete

12   conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete

13   fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating

14   craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Plaintiff avers that

15   "the Biofilter wetlands were created in a "discernible, confined, and discrete" location on the HOA

16   Property, and they convey water and pollutants to Lacamas Lake." Pl.'s Mot. at 9.  Plaintiff argues

17   that applying the CWA definition to these facts, the "Biofilter as a whole constitutes a point source,

18   and each outlet constructed under the pedestrian trail along the northern edge of the Biofilter is a

19   separate point source." Pl.'s Mot. at 9; Compl. ¶ 54.

20          Defendant does not deny that the Biofilter and/or the two outlets are point sources under

21   the CWA, aside from the argument, dispatched above, that they cannot be point sources to the

---

22
23   [4] Because the Court determines that the Biofilter may be a point source even if it is a WOTUS, the question of
     whether the Biofilter is in fact a WOTUS is moot, and will not be addressed.

24   ORDER RE: CROSS MOTIONS FOR
     SUMMARY JUDGMENT

25    - 12

extent they are waters of the United States. Accordingly, the Court grants Plaintiff's motion on this point as well, finding that the Biofilter and its outlets are, in fact, point sources as defined by the CWA.

**C. Defendant's Motion for Summary Judgment**

The CWA prohibits "the discharge of any pollutant by any person" without a permit. 33 U.S.C.A. § 1311. Defendant claims that it is entitled to summary judgment in its favor, arguing that the Plaintiff will be unable to establish several elements of his CWA claim. Its primary argument is that Plaintiff will be unable to demonstrate (1) that Defendant "discharged" pollutants; (2) that the materials discharged from the Biofilter are "pollutants"; or (3) that Defendant is a "person" as defined by the statute. *See* Def.'s Mot. at 22-26. Defendant also argues that it is entitled to summary judgment because the conduct of which it is accused occurred "wholly in the past"; and because the Biofilter and Lacamas Lake are not "meaningfully distinct" bodies of water. *Id*. at 25-26, 28-30. For the following reasons, Defendant has failed to demonstrate that it is entitled to summary judgment on any of these grounds, each of which the Court discusses in turn.

**1. "Discharge"**

Defendant argues first that Plaintiff will be unable to prove that the HOA "discharges" pollutants into Lacamas Lake. As Defendant notes, the CWA defines "discharge" to mean the "addition" of pollutants to a jurisdictional water. 33 U.S.C. § 1362(12); *see also* 40 C.F.R. § 122.2. Plaintiff has alleged that Defendant's failure to maintain the Biofilter is directly linked to the addition of pollutants to Lacamas Lake. *See, e.g.*, Compl. ¶ 40 ("[T]he HOA's lack of maintenance of the Biofilter has transformed the Biofilter from a system that removes pollutants into a system that actually adds pollutants."). Defendant argues, however, that it cannot be charged with

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

1    "adding" pollutants when the putative pollutants are merely a byproduct of what Defendant claims

2    is a "natural process" of decomposition. Def.'s Mot. at 23-24. According to Defendant, "[t]he link

3    between Defendant's alleged failure to arrest a natural process and the pollution resulting from

4    that process is too attenuated to fit within the plain meaning of 'addition.'" Def.'s Mot. at 23.

5            Defendant's argument fails for several reasons, primarily because the CWA does not

6    require proof of the "link" that Defendant argues is missing. It is clear that whether Defendant is

7    itself actively adding pollutants, or is merely allowing the addition of pollutants as a consequence

8    of its continuing inaction—that is, its failure to maintain the Biofilter—is not relevant under the

9    CWA. *See Puget Soundkeeper All. v. Cruise Terminals of Am., LLC*, 216 F. Supp. 3d 1198, 1213

10   (W.D. Wash. 2015) (owner of port facility "may also be liable if it had sufficient control over the

11   cruise terminal and knowledge of the alleged unpermitted discharges, even if it did not create the

12   discharges itself."). The statute imposes liability if "the *point source* is actively adding pollutants

13   to navigable waters. And if the point source is "discharging," the "person" who owns or operates

14   the point source is liable under the Act." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133,

15   1145 (10th Cir. 2005), *as corrected* (Oct. 21, 2005) (emphasis added) ("[P]oint source owners such

16   as El Paso can be liable for the discharge of pollutants occurring on their land, whether or not they

17   acted in some way to cause the discharge.").

18           Defendant attempts to distinguish this authority, arguing that what is at issue here is "a

19   wetland that emerged through natural processes and emits the products of decomposition" and not,

20   as in *El Paso Gold Mines*, an "artificial," inactive mine leaching pollutants into the groundwater.

21   Def.'s Mot. at 24. But while Defendant refers to the Biofilter or the process of decaying vegetation

22   in the Biofilter as "natural" approximately 30 times in its Reply Brief alone, it has failed to

23

24   ORDER RE: CROSS MOTIONS FOR
     SUMMARY JUDGMENT

25    - 14

demonstrate that this is a distinction with legal significance under the CWA. Neither the CWA nor caselaw interpreting claims brought under it draws such a distinction, imposing liability for the "discharge of a pollutant" "defined broadly to include 'any addition of any pollutant to navigable waters from any point source.'" *Rapanos,* 547 U.S. at 723 (quoting 33 U.S.C. § 1362(12)).

Moreover, Defendant also fails to provide sufficient (let alone undisputed) evidentiary support for the claim that as a factual matter, the Biofilter is "entirely natural." In support of its claim that the Biofilter is an "entirely natural wetland," Defendant cites paragraph 11 of the Wynkoop Declaration. Def.'s Mot. at 4. However, that paragraph states only that there were "wetlands already extant on the property on which the Biofilter was constructed," and that the wetland subsequently "expanded to the west to its current boundaries." Wynkoop Decl., Dkt. No. 3, ¶ 11. If anything, this statement reinforces the artificial—or "constructed"—character of the Biofilter. Similarly, Defendant's claim that "[d]ecay naturally occurs in the Biofilter regardless of Defendant's action or inaction" is not supported by the Wynkoop opinion, the cited portion of which states only "[t]he products of the breakdown of dead vegetation in wetlands include phosphorous, nitrogen, and small aggregations of organic and inorganic matter." *See* Def.'s Mot. at 24 (citing Wynkoop Decl. at ¶ 14). There is no dispute that the Biofilter is a man-made facility, making Defendant's claims that "Defendant has done nothing to affect the natural environment" and that the Biofilter is a "wetland that emerged through natural processes" both perplexing and demonstrably false. Def.'s Mot. at 24. In contrast, Plaintiff has submitted evidence supporting its contention that the HOA's failure to maintain the Biofilter is causing the addition of pollutants to Lacamas Lake. *See, e.g.*, Ex. 1 to First Tabata-Callerame Declaration, Dkt. No. 20-1, 2020 Lacamas Shores Biofilter Status Report at 1, 23 (water testing "results indicated that the water

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

- 15

coming into the Biofilter had better water quality values than the water discharged. . . . The age of the Biofilter, the length of time without maintenance, and the amount of accumulated sediment over the last 3 decades may be contributing to the inefficiency exhibited in this Biofilter."). Defendant has therefore failed to demonstrate an absence of dispute on this point and, accordingly, is not entitled to summary judgment on the "discharge" element of Plaintiff's claims.

### 2.  "Pollutants"

Defendant argues that Plaintiff will also be unable to prove that Defendant has added "pollutants" to waters of the United States. Plaintiff has alleged that decomposing matter from vegetation in the Biofilter adds "biological materials and chemical wastes, including phosphorus, suspended solids, and dissolved inorganic chemicals." Compl. ¶ 55. Defendant concedes that "pollutants" are defined under the CWA explicitly to include "biological materials" and that "phosphorus, total suspended solids, and dissolved inorganic chemicals" are also "pollutants" under the statute. Def.'s Mot at 24 (citing 33 U.S.C. § 1362(6)); Ex. 5 to DeNike Decl., Dkt. No. 21 at 5. In a variation of its "natural processes" argument made with respect to the "discharge" element, discussed above, Defendant argues that Plaintiff must also demonstrate that those biological materials were "transformed by human activity" in order to trigger CWA liability.[5] Def.'s Mot. at 24-25. Defendant relies on *Association to Protect Hammersley, Eld, & Totten Inlets v. Taylor Resources, Inc.* for this proposition. 299 F.3d 1007, 1017 (9th Cir. 2002) ("*APHETI*"). In *APHETI*, the Ninth Circuit held that the term "biological materials" in the CWA's definition of "pollutants" did not include the "chemicals, fluids, shells and other materials released" from mussels in a commercial mussel growing operation in Puget Sound. 299 F.3d at 1015. The *APHETI*

---

[5] Defendant does not explicitly deny in its motion that "phosphorous, total suspended solids, and dissolved inorganic chemicals" are pollutants, the discharge of which could trigger liability under the CWA.

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

1    court concluded that the term "'biological material' means the waste product of a human or

2    industrial process," or "materials that are transformed by human activity." *Id*. at 1017. Defendant

3    argues that the decaying matter in the Biofilter, like the mussel waste in *APHETI*, is not

4    "transformed by human activity," and therefore does not meet this standard.

5        The Court concludes that *APHETI* does not control the instant case. In holding that mussel

6    byproduct was not a "pollutant," the *APHETI* court relied on Congress's "plainly and explicitly"

7    articulated goals in enacting the CWA, which included the "protection and *propagation* of ...

8    shellfish." *APHETI*, 299 F.3d at 1016 (citing 33 U.S.C. § 1251(a)(2) (emphasis in *APHETI*); *see*

9    *also* 33 U.S.C. §§ 1312(a), 1314(a)(2)). The court reasoned that "[i]t would be anomalous to

10   conclude that the living shellfish sought to be *protected* under the Act are, at the same time,

11   'pollutants,' the discharge of which may be *proscribed* by the Act." *Id*. at 1016, citing 33 U.S.C.

12   § 1251(a)(2) (emphasis in original). For this reason alone, *APHETI*'s carefully circumscribed

13   holding is inapplicable to the facts of this case, since Defendant here does not (and could not)

14   argue that one of the express purposes of the CWA is to ensure the protection of the vegetation

15   that is the source of the biological materials in the Biofilter, such that it would be "anomalous" to

16   conclude that the decaying materials are "pollutants." *See N. Plains Res. Council v. Fid. Expl. &*

17   *Dev. Co.*, 325 F.3d 1155, 1163 (9th Cir. 2003) (*APHETI* "concluded that shellfish are not

18   pollutants under the CWA unless human activity transforms them . . . [b]ecause one purpose of

19   the CWA is to protect shellfish.").

20       Further, the *APHETI* court emphasized that "the mussels act as filters and are considered

21   by many to enhance water quality by filtering excess nutrients or other matter in the water that can

22   be destructive to marine environments," and made clear that in concluding that the mussel

23

24   ORDER RE: CROSS MOTIONS FOR
     SUMMARY JUDGMENT

25

1  byproducts were not "pollutants" under the CWA, "the addition of this material to the waters, so

2  far as the record shows, does not add any identifiable harm, let alone appreciable or significant

3  damage, to the Puget Sound environment." *APHETI*, 299 F.3d at 1010, 1016 (9th Cir. 2002). As

4  Judge Gould (who also authored *APHETI*) took pains to clarify in a subsequent Ninth Circuit

5  opinion, the "human transformation" requirement articulated in *APHETI* "*refers to the effect of the*

6  *discharge on the receiving water*; it does not require that the *discharged water* be altered by man."

7  *N. Plains Res. Council,* 325 F.3d at 1163 (emphasis added) ("*APHETI* cannot sensibly be read to

8  require human transformation of all materials identified in the CWA's definition of 'pollutant.'").

9          Unlike *APHETI*, this is not a case in which the plaintiff has failed to allege that addition of

10  the biological materials is causing "identifiable harm" or "significant damage" to the waters at

11  issue. To the contrary, the alleged harm to Lacamas Lake is the very premise and purpose of this

12  lawsuit. *See, e.g.*, Compl., ¶¶ 40-41 ("[T]he HOA's lack of maintenance of the Biofilter has

13  transformed the Biofilter from a system that removes pollutants into a system that actually adds

14  pollutants—including phosphorus, suspended solids, and dissolved inorganic chemicals—to

15  Lacamas Lake and the naturally occurring forested wetlands that abut it. The Biofilter is further

16  degrading a system that is already stressed, and it is likely contributing to human health concerns

17  associated with Lacamas Lake and impairing the beneficial uses of this important resource."). The

18  Court concludes that *APHETI* must be distinguished on its facts and does not control the outcome

19  here, and that in light of Defendant's admission that "biological materials" and "phosphorus,

20  suspended solids, and dissolved inorganic chemicals" are "pollutants" under the CWA,

21  Defendant's motion for summary judgment must be denied.[6]

22

23  [6] Defendant incorrectly claims that the court in *North Carolina Shellfish Growers Association* found "a dispute of fact as to whether a natural material was a pollutant." Def.'s Rep. at 6. To the contrary, that court squarely held that

24  ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

25  - 18

1

### 3. "Person"

2      The third element on which Defendant seeks summary judgment is the element requiring

3 that discharge of a pollutant be "by any person."  In challenging this element of Plaintiff's claim,

4 the essential sum of Defendant's argument is that "[t]he only relevant 'act' of Defendant is its

5 purported failure to maintain the Biofilter. The current vegetative makeup of the Biofilter is

6 entirely the result of natural processes," and that the HOA "did not import selected plants or

7 otherwise alter the Biofilter's lifecycle as a wetland or those of its constituent plants." Def.'s Mot.

8 at 25. These arguments speak not to whether the HOA is a "person" under the statute, but to

9 whether a defendant may be liable for a "discharge" or "addition" proscribed by the CWA in the

10 absence of an affirmative act—arguments that have already been discussed and rejected, above.

11      There can be little serious debate that the HOA is a "person" as defined by the CWA. The

12 statute proscribes pollutant discharges by "*any* person," and defines a "person" to include "an

13 individual, corporation, partnership, association, State, municipality, commission, or political

14 subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5). Plaintiff has alleged, and

15 Defendant has not denied, that the HOA is a corporation. *See* Ans., Dkt. No. 5, ¶ 10. Defendant

16 has provided no coherent argument for why the plain meaning of this definition should not be

17 applied here, and has therefore failed to demonstrate it is entitled to judgment as a matter of law

18 on this element of Plaintiff's CWA claim.

19

20

21
_____

22 "[f]ecal coliform bacteria is a biological material and therefore qualifies as a pollutant under the CWA." *N. Caroline Shellfish Growers Ass'n v. Holly Ridge Assocs., LLC.*, 357 N.C. 1429 (E.D.N.C. 2003). The dispute of fact to which

23 Defendant's pin-cite refers was related to whether the bacteria could be traced to defendants' property, not whether the biological materials in question were "pollutants" under the statute.

24 ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

25

**4.   Whether Plaintiff's Claims Fail Because (a) Defendant's Conduct Was "Wholly in the Past"; or (b) the Biofilter and Lacamas Lake Are Not "Meaningfully" Distinct Water Bodies"**

Defendant moves for summary judgment on two additional grounds. First, Defendant argues that "even if Defendant's failure to maintain the Biofilter is sufficient to cause an 'addition of any pollutants . . . by any person,' the actionable conduct occurred wholly in the past," and is therefore not the proper target of a private citizen suit under the CWA. Def.'s Mot. at 25. However, Plaintiff has alleged and provided evidence that both Defendant's failure to maintain the Biofilter, and the discharge of pollutants, are ongoing. *See, e.g.*, Compl. ¶ 2 ("HOA is failing to properly maintain the Biofilter"). Defendant is not entitled to dismissal of Plaintiff's claims on these grounds.

Lastly, Defendant argues that Plaintiff's claims must fail because the Biofilter and Lacamas Lake are not "meaningfully distinct" bodies of water. In *Los Angeles County Flood Control District. v. Natural Resources Defense Council, Inc.,* the Supreme Court observed that "[u]nder a common understanding of the meaning of the word 'add' no pollutants are 'added' to a water body when water is merely transferred between different portions of that water body." 568 U.S. 78, 82 (2013). Plaintiff argues this principle has no application to this case, where he has not claimed that water is "*merely* transferred" from the Biofilter to the lake. Instead, Plaintiff is claiming, and has provided evidence, that decaying vegetation in the Biofilter is causing the addition of pollutants. Defendant does not explain how, given these allegations, the "meaningfully distinct" inquiry is applicable to this case, and appears to abandon this argument by not returning to it in its Reply Brief. Because what is alleged here is not a "mere transfer" of water between different portions of a water body, the Court denies Defendant's request for summary judgment on this point as well.

ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

1

## IV.    CONCLUSION

2      For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Partial Summary

3 Judgment; and DENIES Defendant's Motion for Summary Judgment.

4      Furthermore, the parties are ordered to meet and confer and, no later than 21 days from the

5 date of this order, submit to the Court a Joint Status Report (JSR), to include to the extent possible

6 an agreed proposed pretrial and trial schedule. The parties shall also discuss, and include in the

7 JSR, whether they have attempted mediation and/or agree that court-ordered mediation would be

8 appropriate at this stage of the case.

9      DATED this 18th day of December, 2023.

10

11

12 _____
Barbara Jacobs Rothstein
U.S. District Court Judge

13

14

15

16

17

18

19

20

21

22

23

24 ORDER RE: CROSS MOTIONS FOR
SUMMARY JUDGMENT

25  - 21